UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

MICHAEL GRESHAM et al.,

               Plaintiff,                     Case No. 1:15-cv-1067

v.                                          Honorable Janet T. Neff

HEIDI E. WASHINGTON et al.,

               Defendants.

_____/

**<u>OPINION</u>**

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss with prejudice Plaintiff's complaint against Defendants Washington, Daphne Johnson, Ott, Unknown Party #1, Yarbarra, DeShais, Wendt, Stuten, Michael Smith, Cowling, Stine, Perkins, Cummings, Miller, Heyns, Young, Farr, Pawdy, Norwood, Nevins, Jaramillo, Brown, Nelson, Krovis, Doolittle, Schad, Lebarre,

(unknown) Johnson, and Sikkema for failure to state a claim. The Court will dismiss Plaintiff's claims against the remaining Defendants without prejudice for improper joinder.

## Discussion

### I.    Factual allegations

Plaintiff Michael Gresham[1] presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF). In his action, Plaintiff names 54 Defendants, two of whom are named twice in his complaint (Defendants Heidi E. Washington and Willie O. Smith). He sues MDOC Director Heidi Washington, former MDOC Director Daniel Heyns, MDOC Administrator Daphne M. Johnson and MDOC Mental Health Director David Pawdy. He also sues the following ICF officials: Warden Willie O. Smith; Deputy Wardens John Christiansen, James Schiebner, and Nanette Norwood; Captains Jason DeShais, Kevin Ott, (unknown) Yarbarra, Todd Wendt, Jason Stuten, Michael Smith, Paul Stein, Dewey Watkins, (unknown) Brown, P. McLeod, (unknown) Stambaugh, (unknown) Kotowicz, (unknown) Eaton, Matthew Sherwood, (unknown) Maxim, (unknown) Coscarelli, (unknown) Mullins, J. Smith, (unknown) Smith, and (unknown) Jameson; Emergency Response Team; Doctor (unknown) Cowling; Correctional Officers Useff Perkins and Leslie Cummings; Lieutenants Gary Robert Miller and (unknown) Zwicker; Litigation Specialist Robert Farr; Mat D. Young; Jamie Nelson; Litigation Manager Unknown Party #1; Inspector K. Nevins; Sergeants J. Jaramillo, (unknown) Grandy, (unknown) Leitheim, and (unknown) Conklin; R.C. (Resident Counselor) L. Thurlby; Resident Unit

---

[1]Plaintiff Gresham originally filed his action in conjunction with two other plaintiffs. In an opinion and order issued on November 9, 2015, the Court dismissed the two other Plaintiffs, as their claims were improperly joined. Plaintiff Gresham was granted leave to proceed *in forma pauperis* under the imminent danger exception to 28 U.S.C. § 1915(g), notwithstanding the fact that he previously has filed at least eight prior actions that were dismissed on grounds that they were frivolous or failed to state a claim. Plaintiff also has been denied leave to proceed *in forma pauperis* under the three-strikes rule of § 1915(g) on 16 prior occasions.

Manager (RUM) G. Miniard; Physician's Assistant Joshua Schad; Registered Nurses Barbara Kronk, Nicole Doolittle, Joann Bunting, Jody Lebarre, Kathy Sickler, (unknown) Johnson, Keith Sikkema, and (Unknown) Catela.

Plaintiff's allegations cover multiple incidents and events occurring over a six-month period. In addition to the named Defendants, Plaintiff mentions multiple other officers over the course of his 49-page complaint. His complaint is repetitive and somewhat difficult to decipher, as it is dense, scrawled, moves back and forth in time, and occasionally embellishes earlier allegations as if they were new.

In his first set of allegations, and apparently in order to get around the three-strikes bar of 28 U.S.C. § 1915(g), Plaintiff states that he is in imminent danger because unnamed staff are placing objects in his food, denying him medical treatment for his hernias and rectal bleeding, and forcing him to take antipsychotics that are causing him chest pains and difficulty breathing. (Compl., ECF No. 1, PageID.4.) His subsequent allegations are unrelated to his first claim of imminent danger and to each other.

In his next set of allegations, Plaintiff alleges that, on July 24, 2015, Defendant Thurlby sexually assaulted him in a blind spot in the B-unit day room. Later in his complaint, Plaintiff alleges more specifically that Defendants Sherwood, Thurlby and Coscarelli took him from his cell, telling him they were taking him to the yard. In the B-unit day room, Thurlby, Sherwood and Coscarelli took turns inserting their gloved fingers into Plaintiff's rectum. He alleges that, while escorting him back to his cell, Sherwood grabbed Plaintiff's buttocks while pretending to remove the handcuffs. Plaintiff alleges that Defendants told Plaintiff that they were tired of his filing of grievances. At his cell, Defendants Thurlby, Coscarelli and Sherwood destroyed Plaintiff's

grievances and witness affidavits. Plaintiff claims that he was injured and he has witnesses who witnessed his injuries. Nurses Catela, Sickler and Bunting denied Plaintiff's request to have a sexual-assault kit completed. They also allegedly claimed that they would not help him because of his many grievances.

Plaintiff next alleges that, on July 12, 2015, Defendant Maxim hit Plaintiff in the chest with his fist and that Defendant Maxim and Officer Fineis[2] then grabbed the legal documents Plaintiff carried. Defendants allegedly told Plaintiff that they intended to interfere with Plaintiff's pending lawsuit. Defendants also allegedly confiscated "love letters" from two female guards at Marquette Branch Prison. Maxim and Fineis commented on Plaintiff's sexual relationship with the two guards, which ostensibly involved an exchange for tobacco, cocaine and marijuana. Plaintiff alleges that he was using the letters to file a new lawsuit charging sexual assault by the two female guards. As they escorted Plaintiff back to his cell, Maxim and Fineis both grabbed Plaintiff's buttocks. Once Plaintiff was placed in his cell, Maxim and Fineis told Plaintiff that it was "payback" time, and they began twisting his arm and hand in the food slot, causing lacerations and partial dislocation of his arm. (*Id.* at 32.) Plaintiff claims to have witnesses that he was not resisting. Officers Desroders and Conner[3] and Defendant Nurses Sickler and Catela came to Plaintiff's cell, but refused him medical treatment, telling him that he had gotten what he deserved for suing and trying to sue correctional officers.

Plaintiff next alleges that, while he was in 1-unit between May 14, 2015 and October 1, 2015, Defendant Sherwood, on unspecified occasions, took Plaintiff's food trays, denied him

---

[2]Officer Fineis is not named as a Defendant.

[3]Officers Desroders and Conner are not named as Defendants in the action.

showers, and took Plaintiff's legal and personal property from his cell, including grievances against Sherwood.

On July 30, 2015, Defendants Kotowicz, Sherwood, Maxim, McLeod and Thurlby and non-Defendant Officers Fralick and Fineis took legal property from Plaintiff's cell, ostensibly in retaliation for Plaintiff's grievances and lawsuits. On September 13, 2015, Defendant Leitheim allegedly sprayed Plaintiff with chemical agent in violation of the Eighth Amendment. On an unspecified date, Defendant McLeod called Plaintiff "child molester" and "rat snitch." (*Id.* at 39.) On another unspecified date, Defendant Eaton and unknown others destroyed documents from Plaintiff's pending lawsuit, *Gresham v. Napel et al.*, No. 2:14-cv-253 (W.D. Mich.).

On August 1, 2015, Defendants Sherwood and Watkins allegedly denied Plaintiff a haircut in retaliation for Plaintiff's grievances. On August 12, 2015, Defendant Stambaugh removed from Plaintiff's cell a response from the Attorney General and a court order in *Gresham v. Stewart et al.*, No. 2:13-cv-10189 (E.D. Mich.), as well as a book on true crime, two pictures of a bikini-clad woman, and a letter to Willie X. Harris. Defendants Conklin, Jameson, and Stambaugh and Officers Howard, Conner and Rase[4] also allegedly used excessive force to place Plaintiff in restraints while they stole his personal property.

Plaintiff also alleges that, on August 20, 2015, he filed documents in another prisoner's criminal case, after which the other prisoner was wrongfully accused of a misconduct by a correctional officer who is not a Defendant in this action. Plaintiff also alleges that Defendant Thurlby partially authorized a legal mail disbursement, but denied the disbursement with respect to

---

[4]Officers Howard, Conner and Rase have not been named as Defendants in the action.

one set of materials. Plaintiff alleges that Thurlby stole those materials, which allegedly consisted of a variety of letters and other "evidence" to be used in a future lawsuit.

On August 24, 2015, Defendants Thurlby and Miniard allegedly boasted that they would not provide Plaintiff a box in which to mail the court-ordered 33 copies of the complaint in *Gresham v. Napel et al.*, No. 2:14-cv-253 (W.D. Mich.). Plaintiff alleges that Defendants Thurlby and Miniard attempted to interfere with Plaintiff's right to access the courts. On August 31, 2014, Defendant Miniard came to Plaintiff's cell. After reading Plaintiff's legal mail addressed to the court, Miniard declared that he was not mailing the document and falsely accused Plaintiff of trying to spit on him. Social worker James Apol wrote a grievance against Gresham for threatening behavior. During the review on the grievance, Plaintiff told the hearing investigator (not named as a defendant) to interview certain witnesses, but the hearing investigator refused, telling Plaintiff, "F*** you Gresham and your lawsuit . . . ." (Compl., PageID.38.)

Plaintiff next claims that, on September 11, 2015, Defendant Thurlby picked up Plaintiff's legal mail (a 138-page lawsuit), marked it with a green X, and declared that it was not legal mail. Thurlby then confiscated the documents.

On September 3, 2013, Defendants Miniard and Thurlby told Plaintiff that they had his copies for case No. 2:14-cv-253. Defendants allegedly told Plaintiff that they had a plan to destroy them so that he could not mail them to the court. They told him that they would contact their administrators and attorneys and place Judge Bell on the under-the-table MDOC payroll, so that he would dismiss the case.

When Gresham was out of his cell that same day, Defendants Thurlby, Mullins, McLeod, Smith, Zwiker, and Leitheim and non-Defendant Officers Richardson and Cassel allegedly

stacked the paperwork for Case No. 2:14-cv-253 right next to the cell door, so that Defendant Leitheim could later spray the paperwork with chemical spray. While passing out food trays, Defendant McLeod allegedly yelled, "Hey Gresham I read your file and your [sic] a child molester and rat snitch . . . . Hey everybody Gresham is a snitch and a child molester . . . ." (*Id.* at 39.) Upon hearing McLeod's remarks, several dangerous prisoners began to bang on their doors and shouted that they were going to stab and kill Plaintiff. McLeod allegedly told the prisoners that she would have sex with the first one to stab and kill Plaintiff. As the result of McLeod's conduct, Plaintiff claims to be in imminent danger of serious physical harm.

In addition, after picking up Plaintiff's food tray, Defendant McLeod allegedly did something to the food slot to make it stay open and then falsely accused Plaintiff of holding his food slot hostage. Defendant Leitheim also allegedly fabricated a story to summon the emergency response team. Defendants Correctional Officers Smith and Leitheim and non-Defendant Officer Richardson also came to the cell. Leitheim shook the can of chemical agent, saying, "[i]t's payback time . . . ." (*Id.* at 41.) Leitheim pretended that Plaintiff was not complying with orders to back up and be cuffed, in order to manufacture an excuse for spraying chemical agent into Plaintiff's chest, head, genitals and face. Leitheim also sprayed the rest of the can of chemical agent onto the stack of 33 legal copies. The unknown members of the emergency response team[5] then bent Plaintiff's hands, wrists, fingers and arms and punched Plaintiff in the face, head and body until his lip and nose swelled and began bleeding. The team hogtied Plaintiff and cuffed him, allegedly causing excruciating pain. Plaintiff alleges that these Defendants conspired to violate his Eighth

---

[5]In the body of his complaint, Plaintiff indicates that six unknown parties were the members of the ERT. In his list of Defendants, however, Plaintiff has named only the "Emergency Response Team" as a Defendant in the action.

Amendment rights and to retaliate against him. Defendant Sickler and non-Defendant Nurse Gleason thereafter allegedly denied Plaintiff medical treatment.

On September 3, 2015, Defendants McLeod, Leitheim and Mullins allegedly fabricated three misconduct tickets against Plaintiff, in order to justify Plaintiff being placed in hard restraints. On September 4, 2015, Defendant Jameson refused to release Plaintiff from hard restraints. Defendant Leitheim and non-Defendant Officer Kelly allegedly refused to release Plaintiff from hard restraints on September 5, 2015. Defendants Miniard and Thurlby allegedly denied the request on September 4, 2015, and Defendants Grandy and J. Smith denied the request on September 5, 2015.[6] All Defendants allegedly told Plaintiff that they were conspiring to keep him in restraints because he filed too many complaints and lawsuits.

Plaintiff alleges that Defendant McLeod and non-Defendant Officer Kronk came to his cell on various occasions between May 14, 2015 and October 6, 2015, asking to see his penis. Defendant McLeod threatened not to serve Plaintiff's food tray and to have him chemically sprayed unless he complied. Kronk allegedly told Plaintiff that unless he showed her his penis and masturbated, she would write him a misconduct ticket and lie, in order to have his psychotropic medications increased.

According to the complaint, Defendant Thurlby and non-Defendant Mailroom Officer Farrel confiscated Plaintiff's revolution newspapers, which purportedly advocated only peaceful protest against government corruption. Plaintiff alleges that the confiscations occurred on August 11, August 28, September 4, and September 17, 2015. Plaintiff complains that the actions were retaliatory and violated his freedom of speech.

---

[6] Plaintiff alleges that Correctional Officers Wiiliams, Woods and Hair and Lieutenant Stewart, none of whom are named as Defendants, also denied his requests to be released from restraints.

On September 14, 2015, Plaintiff gave non-Defendant Officer Eaton 20 legal letters listed on 2 disbursement forms. Plaintiff saw Eaton bring the letters to Defendant Thurlby's office. Defendants Thurlby and Miniard refused to process the legal mail, telling Plaintiff that they were not sending the mail out. Plaintiff complained to Defendant Christiansen, who told Plaintiff that he personally had ordered Thurlby and Miniard to take Plaintiff's mail. On September 30, 2015, when Plaintiff submitted a disbursement form, seeking additional legal supplies and a large box for mailing. Defendant Thurlby denied the request.

Plaintiff complains that, between May 14, 2015 and October 6, 2015, he complained to Defendants Scheibner, Christiansen, Zwicker, Concklin, Leithem and non-Defendant Officers Howard and Riske that his life was in danger from various prisoners because he had been called a snitch, a rat, and a child-molester. Every Defendant allegedly told Plaintiff that they would protect him only if he stopped filing lawsuits. Plaintiff alleges that he sent a "declaratory ruling and request for protection" to Defendant Washington, in which he included allegations that staff were smuggling drugs and forcing and bribing a female correctional officer into a sexual relationship that resulted in a pregnancy, and that Warden McKee was operating a prostitution ring. Plaintiff also alleges that, on June 4, 2015, he talked with Defendant Willie Smith and non-Defendant Brooke Snyder while they were conducting rounds, explaining that he was in danger because unspecified officers had called him a snitch.[7]

In sum, Plaintiff alleges that Defendants violated his First Amendment right to free speech, retaliated against him for exercising his First Amendment rights to petition government, interfered with his access to the courts, and confiscated his property without due process. Plaintiff

---

[7]The Court notes that the date precedes virtually all of the other allegations in the complaint, including the allegations that he was called a snitch on September 3, 2015.

also alleges that Defendants deprived him of his property without due process and inflicted cruel and unusual punishment in violation of the Eighth Amendment.

For relief, Plaintiff seeks in excess of $500 million in compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Lack of Allegations

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir.

2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails to even to mention Defendants Daphne Johnson, Ott, Yarbarra, DeShais, Wendt, Stuten, Michael Smith, Cowling, Stine, Perkins, Cummings, Miller, Heyns, Young, Farr, Unknown Party #1, Pawdy, Norwood, Nevins, Jaramillo, Brown, Nelson, Krovis, Doolittle, Schad, Lebarre, (unknown) Johnson, and Sikkema in the body of his complaint. His allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Plaintiff's complaint against these Defendants therefore will be dismissed for failure to state a claim.

### B. Misjoinder

As earlier discussed, Plaintiff's original complaint was filed jointly with two other Plaintiffs who alleged wholly different constitutional violations. The Court dismissed the other Plaintiffs for improper joinder. At this juncture, the Court concludes that the majority of Plaintiff's claims against Defendants also are subject to dismissal for improper joinder.

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the

action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 CHARLES ALLEN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE CIVIL § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts of . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different

geographical locations." *Id.* (quoting *Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247, *3 (E.D. Mich. December 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F. 3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding *in forma pauperis*, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F. 3d 596, 603 (6th Cir. 1998). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F. 3d 1126, 1127-28 (5th Cir. 1997). Allowing a prisoner to file a complaint against different defendants concerning unrelated occurrences would "'defeat, or at least greatly dilute, the clear intent of the fee payment and three-strikes provisions of the statute.'" *Green v. Callahan*, No. 2:14-cv-11453, 2014 WL 1652335, at *3) (quoting *Walls v. Scott*, 1998 WL 574903, * 3 (N.D. Tex. Aug. 28, 1998)); *see also George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("A buckshot complaint that would be rejected if filed by a free person -- say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions -- should be rejected if filed by a prisoner."); *Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing prisoner to assert unrelated claims against new defendants would defeat

purpose of the three-strikes provision of the PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (discouraging "creative joinder of actions" by prisoners attempting to circumvent the PLRA's three-strikes provision).

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("Parties may be dropped . . . by order of the court . . . of its own initiative at any stage of the action and on such terms as are just."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV, Inc.*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Building Co.*, 848 F.2d at 682.

Dismissal of Plaintiff's unrelated claims would not cause gratuitous harm. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[8] All of Plaintiff's claims arose in 2015. Plaintiff therefore will not be barred from pursuing his claims by the statute of limitations.

The Court therefore will look to Plaintiff's first set of factual allegations and to Plaintiff's first named Defendant in determining which portion of the action should be considered related. In his first set of allegations, Plaintiff states that he was in imminent danger of serious physical injury because unnamed staff are placing objects in his food, denying him medical treatment for his hernias and rectal bleeding, and forcing him to take antipsychotics that are causing him chest pains and difficulty breathing. (Compl., ECF No. 1, PageID.4.) Plaintiff makes no further claims about his improper medical treatment of these conditions. Because Plaintiff's allegations on this issue are wholly conclusory and because he fails to identify any Defendant responsible for the

---

[8] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

alleged deprivations, Plaintiff's first claim is dismissed on the basis of insufficient factual allegations. Because the remainder of the allegations are wholly unrelated to his initial claim and are unconnected to any Defendant named in the first claim, allowing Plaintiff to join together a number of unrelated claims and defendants into one action would thwart the purpose of the PLRA.

Moreover, should the Court consider the complaint by looking at the allegations against the first Defendant, MDOC Director Heidi Washington, Plaintiff would not avoid dismissal of his claims. Plaintiff's only allegations against Defendant Washington are that she failed to respond to his letters, denied his grievances, and otherwise failed to supervise her subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Washington engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

Because Plaintiff's remaining claims are neither transactionally related to either the same transaction as his first claim, and because no other viable claims were made against Defendant Washington acting in conjunction with another official, Plaintiff's remaining claims against all the other Defendants are improperly joined under Rules 18 and 20 of the Federal Rules of Civil Procedure. *See Proctor*, 661 F. Supp. 2d at 778; *Garcia*, 2007 WL 2064476, at *3; *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989); *George*, 507 F.3d at 607. The Court therefore will dismiss the remaining claims against the remaining Defendants without prejudice.

## C. Abusive Filings

Plaintiff Gresham has been a particularly active litigant in this Court, having filed nearly 40 actions. In eight of his cases, all of his claims were dismissed because they were frivolous, malicious or failed to state a claim. *See Gresham v. Caruso et al.*, No. 2:10-cv-196 (W.D. Mich. Oct. 27, 2011); *Gresham et al. v. Canlis et al.*, No. 2:11-cv-179 (W.D. Mich. July 29, 2011); *Gresham v. Paine et al.*, No. 1:10-cv-1146 (W.D. Mich. Mar. 8, 2011); *Gresham v. Caruso et al.*, No. 1:10-cv-1038 (W.D. Mich. Jan. 26, 2011); *Gresham v. Wolak et al.*, No. 2:10-cv- 239 (W.D. Mich. July 25, 2011); *Gresham v. Verville et al.*, No. 2:10-cv-198 (W.D. Mich. Jan. 19, 2011); *Gresham v. Caruso et al.*, No. 2:10-cv-195 (W.D. Mich. Apr. 11, 2011); *Gresham v. Mich. Dep't of Corr. et al.*, No. 2:07-cv-241 (W.D. Mich. June 9, 2008). In each of these actions, Plaintiff sued many defendants with respect to a number of unrelated sets of circumstances.

Thereafter, Plaintiff was denied leave to proceed *in forma pauperis* in 16 cases. *See Gresham et al. v. Yunker et al.*, No. 2:13-cv-221 (W.D. Mich. Aug. 29, 2013); *Gresham v. Nader et al.*, 2:13-cv-212 (W.D. Mich. July 22, 2013); *Gresham et al. v. Napel et al.*, No. 2:13-cv-176 (W.D. Mich. June 12, 2013); *Gresham v. Prelesnik et al.*, No. 1:12-cv-276 (W.D. Mich. July 2,

2012); *Gresham v. Czop et al.*, No. 1:12-cv-494 (W.D. Mich. June 18, 2012); *Gresham v. Heyns et al.*, No. 1:12-cv-277 (W.D. Mich. Apr. 11, 2012); *Gresham v. Snyder et al.*, No. 1:12-cv-143 (W.D. Mich. Mar. 6, 2012); *Gresham v. Mutschler et al.*, No. 2:12-cv-12 (W.D. Mich. Apr. 20, 2012); *Gresham v. Snyder et al.*, No. 2:12-cv-22 (W.D. Mich. Mar. 30, 2012); *Gresham v. Mutschler et al.*, No. 2:12-cv-9 (W.D. Mich. Feb. 10, 2012); *Gresham v. Snyder et al.*, No. 2:12-cv-5 (W.D. Mich. Jan. 27, 2012); *Gresham v. Violetta et al.*, No. 2:12-cv-24 (W.D. Mich. Feb. 6, 2012); *Gresham v. Dahl et al.*, No. 2:12-cv-21 (W.D. Mich. Feb. 6, 2012); *Gresham v. Napel et al.*, No. 2:11-cv-520 (W.D. Mich. Feb. 6, 2012); *Gresham v. LaChance et al.*, No. 2:11-cv-231 (W.D. Mich. June 24, 2011); *Dennis et al v. Canlis et al.*, No. 2:11-cv-186 (W.D. Mich. June 6, 2011). In many of these actions, Plaintiff named dozens of Defendants and raised multiple unrelated issues. None of the actions, however, successfully alleged that Plaintiff was in imminent danger of serious physical injury within the meaning of 28 U.S.C. § 1915(g).

During the course of being denied leave to proceed *in forma pauperis*, Plaintiff learned to pursue several different avenues for avoiding the three-strikes rule. In a number of cases, as in the instant case, he filed improperly joined complaints in conjunction with other Plaintiffs, in an attempt to reduce his portion of the filing fee under the three-strikes rule. *See Tillman v. Huss et al.*, No. 1:13-cv-297 (W.D. Mich.); *Gresham et al. v. Yunker et al.*, No. 2:13-cv-221 (W.D. Mich.); *Sanders v. Napel et al.*, No. 2:13-cv-264 (W.D. Mich.); *Gresham et al. v. Napel et al.*, No. 2:13-cv-176 (W.D. Mich.); *Oliver v. Parkkila et al.*, No. 2:12-cv-292 (W.D. Mich.); *Gresham et al. v. Mutschler et al.*, No. 2:12-cv-12 (W.D. Mich.); *Dennis et al. v. Canlis et al.*, No. 2:11-cv-186 (W.D. Mich.); *Gresham et al. v. Canlis*, No. 2:11-cv-179 (W.D. Mich.); *Gresham et al. v. Neubecker*

*et al.*, No. 2:11-cv-171 (W.D. Mich.); *Gresham et al. v. Smith et al.*, No. 1:10-cv-1233 (W.D. Mich.); *Gresham et al. v. Smith et al.*, No. 1:10-cv-1215 (W.D. Mich.).

Applying a different strategy, Plaintiff filed motions in other prisoners' actions, seeking joinder of his own claims or consolidation with his own cases. *See Sanders v. Napel et al.*, No. 2:13--cv-264 (W.D. Mich.) (Mot. for Joinder, ECF No. 86, May 7, 2015). *Tillman v. Huss et al.*, No. 1:13-cv-297 (W.D. Mich.) (Mot. for Joinder, ECF No. 10, June 6, 2013); *Hursey v. Romanowski et al.*, No. 1:12-cv-1403 (W.D. Mich.) (Mot. for Joinder, ECF No. 4, Jan. 25, 2013); *Wills v. Barber et al.*, 1:12-cv-434 (W.D. Mich.) (Mot. for Joinder, ECF No. 55, Dec. 17, 2012); *Oliver v. Parkkila et al.*, No. 2:12-cv-292 (W.D. Mich.) (Mot. for Joinder, ECF No. 53, June 19, 2013); *Aubry v. Wolak et al.*, No. 2:12-cv-168 (W.D. Mich.) (Mot. for Joinder, ECF No. 5, Apr. 30, 2012); *Mays v. Gorman et al.*, No. 1:11-cv-694 (W.D. Mich.) (Mot. for Joinder, ECF No. 76, December 17, 2012). By seeking to join or joining already filed complaints, Plaintiff could avoid entirely any responsibility for the filing fee.

Finally, Plaintiff made sure that he included at least one claim that arguably involved imminent danger of serious physical injuries among his other sets of allegations. Nevertheless, most of Plaintiff's remaining actions were either dismissed in whole without prejudice because Plaintiff had failed to comply with a Court order, or dismissed in part with prejudice because many if not most of the allegations failed to state a claim.

Over the course of the last several years, the Court has generously considered each of Plaintiff's claims, regardless of whether they were properly joined. Plaintiff, however, continues to abuse the litigation process by filing lengthy complaints that routinely name 40 or 50 defendants and allege conduct that occurred over months of his incarceration. In these cases, as in the instant

case, Plaintiff was able to avoid being barred from proceeding *in forma pauperis* by the three-strikes rule only because he was able to allege that he was in imminent danger with respect to a single set of allegations, which formed only a small part of his complaint. The remainder of the allegations of these complaints related to issues such as access to the courts and retaliation, none of which would permit Plaintiff to overcome the bar of the three-strikes rule. Moreover, Plaintiff's cramped writing and the complexity of his many allegations has required this Court to expend enormous resources to simply understand and organize the allegations.

At this juncture, the Court must consider how to address Plaintiff's abusive litgation strategies. The Sixth Circuit regularly has approved the imposition of prefiling restrictions on plaintiffs who continuously file abusive litigation. "While this court cannot absolutely forbid an individual from initiating an action or pursuing an appeal in federal court, *Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1996), the court may impose pre-filing restrictions on an individual with a history of repetitive or vexatious litigation." *Shephard v. Marbley*, 23 F. App'x 491, 493 (6th Cir. 2001) (citing *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998); *Ortman*, 99 F.3d at 811). Plaintiff's prolongued abuse of the joinder process and his convoluted attempts to avoid the application of the three-strikes rule warrant the Court exercising its inherent authority to restrict his filings. As a consequence, the Court will prohibit Plaintiff from filing any future complaint that contains claims arising out of more than a single transaction. The Court also will prohibit Plaintiff from filing any complaint jointly with another prisoner and from seeking to join another Plaintiff's action. Further, Plaintiff may not file any future complaint exceeding 10 pages in length.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint against Defendants Washington, Daphne Johnson, Ott, Yarbarra, DeShais, Wendt, Stuten, Michael Smith, Cowling, Stine, Perkins, Cummings, Miller, Heyns, Young, Farr, Unknown Party #1, Pawdy, Norwood, Nevins, Jaramillo, Brown, Nelson, Krovis, Doolittle, Schad, Lebarre, (unknown) Johnson, and Sikkema will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss the remaining claims and Defendants without prejudice, because they were improperly joined. The Court also will order restrictions on Plaintiff's future filings.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An Order and Judgment consistent with this Opinion will be entered.


Dated: __January 6, 2016_____          __/s/ Janet T. Neff_____
                                                                    Janet T. Neff
                                                                    United States District Judge